IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SAM BONE,

        Plaintiff,

v.                                                    Civ. No. 04-121 JH/LCS

STATE OF NEW MEXICO,
MARTIN LUTHER KING COMMISSION,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment [Doc. No. 25]. This is a reverse discrimination case in which Plaintiff Same Bone ("Bone") accuses Defendant of discriminating against him because of his gender by terminating his employment and hiring a woman in his place. The issue before the Court is whether there is a genuine issue of material fact such that the case should go to a jury. After a thorough review of the law, the arguments of counsel, deposition testimony, affidavits, and other evidence, the Court concludes that the motion should be granted.

## LEGAL STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). The material facts are those identified by controlling law as essential elements of claims asserted by the parties. In other words, the materiality of a fact depends on whether the

existence of the fact could cause a jury to reach different outcomes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001). An issue is genuine as to such facts if the evidence is sufficient for a reasonable trier of fact to find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Id*. However, the Court is not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones. *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988). In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id*. Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question. *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).

The Court will consider the motion for summary judgment in light of these principles.

## DISCUSSION

### I. FACTS

After reviewing all of the depositions, affidavits, and other evidence on file, the Court has found the following facts, viewed in the light most favorable to Bone.[1] Unless otherwise noted, the

---

[1] The evidence propounded by Bone also includes conclusory and speculative statements made without personal knowledge. For example, in his affidavit, Cecil Lynn states that "the decision to replace Mr. Bone with a woman, was wrong and designed to replace a man with a

2

facts are undisputed.

Plaintiff Bone is the former executive director of the State of New Mexico's Martin Luther King, Jr. Commission ("the Commission"). In 1991, the New Mexico State Legislature created the Commission to develop and promote the annual statewide commemoration of the birth of civil rights leader Martin Luther King, Jr. NMSA 1978, § 28-19-1 et seq. The Commission is composed of thirteen members, four of whom are appointed by the Governor. Id. at § 28-19-1(C). The remaining nine members are appointed by various state government officials, including members of the Senate and House of Representatives, and members of the Governor's cabinet. Id. In addition, the Commission appoints an executive director to coordinate all activities on its behalf. Id. at § 28-19-1(G).

Bone began serving as executive director of the Commission in January of 1994 and continued in that capacity until he was replaced in February of 2003. During his term of employment as the executive director, Bone was an "exempt employee" as that term is defined by the New Mexico Personnel Act, NMSA 1978, § 10-9-4(C). Complaint at ¶ 14. Accordingly, Bone was excluded from

---

woman." Lynn Decl. at ¶ 26. There is nothing in Lynn's declaration to suggest, however, that he has personal knowledge of the motivations of either the Governor or the Commission members who voted to remove Bone. Similarly, Bone made the following statement in his Declaration: "I was informed that Governor Richardson preferred a female for the position and because Ms. Redmon had worked on his campaign for governor of the State of New Mexico, he preferred her.... the governor wanted a female in my position and he was willing to use his political connections to get it done." Bone Decl. at ¶ 11. Again, the Court will not consider this statement, as it contains only inadmissible hearsay and is not based upon Bone's personal knowledge, but rather upon speculation and the statements of some unidentified third party. In addition to speculation, hearsay, and other statements not based on his own personal knowledge, Bone's declaration also contains a great deal of legal argument. *See, e.g.*, Bone Decl. at ¶ 15, 17, 18, 21, 22, 26, 28, 29, 33-35, 37-38, 40-57, 62-65, 68-70. The Court has considered only those portions of the Bone Declaration that contain facts made within his personal knowledge, and will not consider argument and speculation contained therein.

3

the protections that the Personnel Act extends to public employees. There does not appear to be a fact dispute regarding whether Bone has the requisite qualifications for the position of executive director.[2]   However, there is a fact dispute as to whether Bone's job performance was satisfactory during his nine-year tenure in the position. The former chairman of the Commission, Cecil Lynn (male), gave Bone positive performance evaluations in 1998, 1999, 2001, and 2002. *See* Lynn Decl. and exhibits thereto. On the other hand, Mary Molina Mescal, a former member of the Commission during Bone's tenure, pointed out problems with his job performance as executive director. Mescal Depo. at pp. 45-64.

In November of 2002, Bill Richardson was elected Governor of New Mexico. He then asked members of various boards and commissions (including Mr. Lynn), as well as their executive directors, to resign. Lynn Decl. at ¶ 9. Mr. Lynn resigned at the Governor's request, Lynn Decl. at ¶ 17, leaving Mary Molina Mescal (female) as the acting chairman. Bone Decl. at ¶ 62. In that time frame, the Governor discussed with Jo Ella Redmon ("Redmon") the possibility of appointing her to certain government positions. In discussions with a third party, Redmon stated words to the effect that the position with the Martin Luther King Commission was the last one that the Governor was going to suggest, and she was going to take it. Redmon Depo. at pp. 79-80.

Bone also testified that one of Governor Richardson's aides, Kathy Keith (female), told him that the Governor knew that he could not directly appoint the Commission's executive director, but that he would inform the members of the Commission regarding who he wanted them to appoint.

---

[2]According to his Declaration attached to his response brief, Bone holds a bachelor's degree in electrical engineering and worked for the Department of Defense at White Sands Missile Range for 33 years. Bone Decl. at ¶¶ 2-3. He was also the chairman of the National Martin Luther King, Jr. Committee. Id. at ¶ 60.

Bone Depo. at p. 17. Kathy Keith confirmed that she informed Mary Molina Mescal, then-chairman of the Commission[3], of the Governor's preference that Redmon be selected as executive director. Keith Depo. at pp. 15, 31-33. Redmon told Cecil Lynn that the Governor had offered her several jobs, Lynn Decl. at ¶ 20, and that the Governor wanted her to serve as executive director of the Commission. Id. at ¶ 23. Bone also testified that in late January or early February of 2003, Redmon told him, "The Governor wants me, he does not want you, why don't you just let it be?" Bone Depo. at p. 76.

In addition, sometime prior to Redmon's selection, Bishop Michael Shelby called Cecil Lynn and told him that the Governor had appointed Shelby to the Commission in order to serve as chairman. Lynn Decl. at ¶ 14-17. The Governor also replaced three of the four members of the Commission whose positions were slotted as gubernatorial appointments. Bone Decl. at ¶ 33. Of these three, one (Bishop Shelby) was male, and a second, Lovie McGee, was female. There is no information in the record as to the gender of the other appointee.

Bone has provided the Court with a copy of what appears to be an email dated January 16, 2003 (while Bone still held the position of executive director) from an unidentified source to other unidentified parties, ostensibly referring to appointments by the newly elected Governor.[4] The email states that "While there is some concern in the African American community about no Blacks being selected at the Secretarial level, a number of 'other' selections were made. They are as follows: ...

---

[3] Mescal was subsequently appointed executive director of the Commission on the Status of Women. There is no evidence in the record regarding the specifics of that appointment.

[4] This document is unauthenticated and unverified, and appears to contain hearsay. Under the current record it would not be admissible at trial, and ordinarily the Court would not consider it on a motion for summary judgment. However, as Defendant has failed to object to this exhibit or to contest its authenticity, the Court will consider it here.

Jo Ella Redmon, Director, MLK Jr., Commission." From this the jury could infer that the replacement of Bone by Redmon was a forgone conclusion, inasmuch as the Governor expected that the voting members of the Commission would adhere to his wishes and hire Redmon as their executive director.

On February 14, 2003, the Commission met in an executive session with Mescal as acting chairman. *See* Defendant's Ex. 7 (meeting minutes). According to the minutes of the meeting, twelve commissioners were present.[5] The Commission interviewed Redmon for the position of executive director. Before the Commission voted to appoint Redmon as executive director, its members did not interview Bone; rather, he was given two minutes to tell the members why he wanted to be the executive director. Bone Depo. at p. 72; Bone Decl. at ¶ 37. Later that day, the Commission convened in an open meeting and voted six to four (with one member absent and two not voting) to appoint Redmon as the new executive director.

On February 24, 2003, Redmon wrote a letter to the Governor, stating "Thank you for the opportunity to be in the position to be selected as the Executive Director of the State Martin Luther King Jr. Commission.... Three of your four appointees attended the meeting. Bishop Shelby was the only Governor-appointee that voted in my favor. Thank you for your wisdom in appointing Bishop Shelby to serve on the Commission." Plaintiff's Ex. 6.

After Redmon was appointed, the salary for the executive director was raised approximately $22,000 above the salary that had been paid to Bone. However, the Commission does not have the power to set the salary for its executive director; rather, that function is carried out by the Office of

---

[5] The parties have not provided the Court with evidence regarding the respective genders of the commissioners, at least two of whom have gender-neutral names, nor how they voted.

the Governor and the New Mexico Department of Finance and Administration. NMSA 1978, § 10-9-5.

There is a factual dispute regarding whether Redmon was qualified for the position of executive director. Before being named as executive director, Redmon had served as a member of the Commission for at least nine years.[6] In addition, she attended New Mexico Highlands University and the University of Albuquerque, from which she obtained a bachelor of science degree, although it unclear in what field. Redmon Depo. at pp. 12-14. She has held a variety of jobs, including surgical technician, deputy sheriff, liason to the Mayor of Albuquerque, medicaid fraud investigator, manager of a community center, program specialist for the City of Albuquerque, and assistant to the Mayor of Albuquerque. Id. at pp. 20, 30, 40-42, 45, 53. However, it is undisputed that Redmon had political ties to Governor Richardson, as she had campaigned for him the previous year. In addition, Redmon had worked on Governor Richardson's gubernatorial campaign; Bone had not. Bone Depo. at pp. 12-13; Redmon Depo. at p. 75. At his deposition, Bone testified as follows:

> Q. Do you think [Redmon's] appointment was political?
> A. Yes, ma'am.
> Q. Why do you think she was chosen?
> A. Because, ma'am, she worked on the Governor's campaign.

Bone Depo. at ¶ 15. In his Declaration, however, Bone clarified that his contention in this lawsuit is that the Governor wanted a female to be the executive director, that he chose Redmon in particular because she had worked on his campaign, and that he used his political power to influence the votes of the members of the Commission. Bone Decl. at ¶¶ 11-12.

---

[6] It is not clear from the record how long Redmon served as a member of the Commission; however, her tenure was at least as long as Bone's service as executive director. Bone Depo. at p. 15.

On February 4, 2004, Bone filed his Complaint in this Court for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and violation of his First Amendment rights of free speech and free association. The gravamen of Bone's complaint is that Defendant improperly terminated his employment because he is male and for the purpose of replacing him with a woman. On July 7, 2004, the parties stipulated to dismissal of Bone's constitutional claims, leaving only his claim for sex discrimination under Title VII.

## II.     BONE'S CLAIM FOR SEX DISCRIMINATION UNDER TITLE VII

Title VII provides that it is an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

To ultimately prevail on any Title VII claim, a plaintiff must prove termination was based upon intentional discrimination. *See EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000). At the summary judgment stage, however, a plaintiff may rely upon either direct or circumstantial evidence of discriminatory intent. *See id*. In this case, it does not appear that Bone is relying upon direct evidence of sex discrimination. Where there is no direct evidence of discrimination, the Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000).

Under *McDonnell Douglas*, a plaintiff must establish a prima facie case of unlawful discrimination. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the

plaintiff's termination. *See id*. If the employer produces such a reason, the burden returns to the plaintiff, who can avoid summary judgment only if he or she shows that the employer's proffered reason was merely a pretext for unlawful discrimination. *See id*.

Ordinarily, a plaintiff who has been terminated can prove a prima facie case of employment discrimination by producing evidence that (1) he or she belongs to a protected class, (2) he or she was qualified for the job, (3) despite these qualifications, he or she was terminated, and (4) the job was not eliminated after his or her discharge. *See, e.g., Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999). Establishing a prima facie case gives rise to the rebuttable presumption that the employer unlawfully discriminated against the employee. *See id*.

It is undisputed that Bone satisfies the second, third, and fourth elements of the prima facie case.[7] However, for purposes of this analysis, Bone does not satisfy the first prong of the test because for the purposes of this lawsuit, he does not belong to a protected class. Rather, Bone contends he was terminated because he is male, and males are a traditionally *favored* group. Accordingly, the Court must analyze his claim under the reverse discrimination framework. In *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992), the Court of Appeals for the Tenth Circuit held that a Title VII disparate treatment plaintiff who pursues a reverse discrimination claim, and seeks to obtain the benefit of the *McDonnell Douglas* presumption, must, in lieu of showing that he belongs to a protected group, "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Id*. The

---

[7] Even if Bone's alleged poor job performance over the nine years that he held the position renders him unqualified, there is sufficient evidence of Bone's good job performance such that, at a minimum, there is a genuine fact issue that must be viewed in Bone's favor at this stage of the proceedings.

9

Tenth Circuit confirmed this requirement in *Mattioda v. White*, 323 F.3d 1288, 1292-93 (10th Cir. 2003). Therefore, the Court will analyze Bone's claim under this modified version of the prima facie case.

A review of the materials provided by Bone demonstrates that he has failed to meet his prima facie burden to show background circumstances supporting an inference that defendant is one of those unusual employers who discriminates against men in the workplace. In order to satisfy his burden, Bone must come forward with evidence that demonstrates that Defendant's decision to replace him with a woman was motivated by gender, rather than some other non-discriminatory reason, such as political payback.

In support of his argument, Bone contends that one can infer discrimination against males from the fact that the Governor's aide, Kathy Keith, is female, as is Mary Molina Mescal, who voiced concerns about Bone's job performance, was acting chairman of the Commission at the time of the February 14, 2003 vote, and who later received an appointment as executive director for the Commission on the Status of Women. However, without more, one cannot presume that a member of a protected class will always favor members of that same group. Bone also relies upon the fact that the Committee spoke to Redmon at some length and asked her questions, while he was merely given two minutes to explain why he wanted to continue to be the executive director. While one might reasonably infer from this that the members of the Commission had already made up their minds as to how they would vote, it does not support an inference that their votes were necessarily based upon gender. Finally, he points to his assertion that Redmon is less qualified for the position than he, which is a disputed fact question that must, at this stage, be viewed in favor of Bone. However, "it is not enough to allege that a plaintiff was qualified and that someone of a different [gender] was

10

promoted. Rather, the plaintiff must allege and produce evidence sufficient to support a reasonable inference that but for the plaintiff's status, the challenged decision would not have occurred." *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369 (10th Cir. 1997) (citing *Notari*, 971 F.2d at 590).

This evidence, taken together, is not enough to support a reasonable inference that either the State of New Mexico in general, or the Commission in particular, is an employer that discriminates against men such that Bone would still be employed as executive director had he been female. The only "evidence" of a gender bias is the inadmissible hearsay propounded by Bone and the conclusory statement by Lynn that the Governor "wanted a woman in the position." As previously explained, these statements are not competent evidence. There is no evidence from which one can infer that any of the six commissioners who voted to hire Redmon were motivated by a desire to promote women over men. Similarly, the record contains no evidence of any systemic discrimination against men throughout New Mexico state government or the Governor's administration.

Because the evidence does not support an inference that Defendant is the unusual employer that discriminates men, Bone has failed to satisfy the requirements of his prima facie case. Accordingly, the Court need not address the remainder of the *McDonnell Douglas* burden-shifting analysis, and Defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 25] is **GRANTED**.

_____
UNITED STATES DISTRICT JUDGE